**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**Southern Division**

| | | |
|---|---|---|
| **TRAVIS X. CARR,** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | **Civil No. TMD 15-685** |
| **v.** | * | |
| | * | |
| | * | |
| **CAROLYN W. COLVIN,** | * | |
| **Acting Commissioner of Social Security,** | * | |
| | * | |
| **Defendant.** | * | |

\*\*\*\*\*\*\*\*\*\*\*\*

**MEMORANDUM OPINION GRANTING PLAINTIFF'S**
**ALTERNATIVE MOTION FOR REMAND**

Plaintiff Travis X. Carr seeks judicial review under 42 U.S.C. § 405(g) of a final decision of the Commissioner of Social Security ("Defendant" or the "Commissioner") denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act. Before the Court are Plaintiff's Amended Motion for Summary Judgment and alternative motion for remand (ECF No. 19), Defendant's Motion for Summary Judgment (ECF No. 22), and Plaintiff's "Reply Memorandum in Opposition to Defendant's Motion for Summary Judgment" (ECF No. 23).[1]  Plaintiff contends that the administrative record does not contain substantial evidence to support the Commissioner's decision that he is not disabled.  No hearing is necessary.  L.R. 105.6.  For the reasons that follow, Plaintiff's alternative motion for remand (ECF No. 19) is **GRANTED**.

---

[1] The Fourth Circuit has noted that, "in social security cases, we often use summary judgment as a procedural means to place the district court in position to fulfill its appellate function, not as a device to avoid nontriable issues under usual Federal Rule of Civil Procedure 56 standards." *Walls v. Barnhart*, 296 F.3d 287, 289 n.2 (4th Cir. 2002).  For example, "the denial of summary judgment accompanied by a remand to the Commissioner results in a judgment under sentence four of 42 U.S.C. § 405(g), which is immediately appealable."  *Id.*

# I

## Background

Plaintiff was born in 1957, has a high-school education, and previously worked as a limousine driver, paralegal, real estate leasing agent, collector, and collections manager.  R. at 163, 3950.  Plaintiff filed applications for DIB and for Supplemental Security Income ("SSI") on June 30, 2010, alleging disability beginning on September 15, 2008, due to stroke, hypertension, and depression.  R. at 9, 162.  State agency consultants granted Plaintiff's SSI application as of June 30, 2010.  R. at 9, 70, 3936.  The Commissioner denied, however, Plaintiff's application for DIB initially and again on reconsideration, so Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  R. at 61-82.

ALJ María Alexander Nuñez held a hearing on January 18, 2013 (R. at 18-60), and issued an unfavorable decision on March 18, 2013 (R. at 6-17).  On May 22, 2013, the Appeals Council denied Plaintiff's request for review.  R. at 1-5.  Plaintiff sought judicial review in this Court. *Carr v. Colvin*, Civil No. SAG 13-1637 (D. Md. filed June 6, 2013).  Upon the Commissioner's consent, the Court remanded the case on January 15, 2014.  R. at 4102-03.  The Appeals Council vacated the ALJ's decision and remanded the case on February 24, 2014.  R. at 4104-08.  On July 15, 2014, ALJ Theodore P. Kennedy held a hearing at which Plaintiff, a medical expert, and a vocational expert ("VE") testified.  R. at 3960-4007.  On August 1, 2014, ALJ Kennedy issued a decision finding Plaintiff not disabled from the alleged onset date of disability of September 15, 2008, through the date last insured of March 31, 2009.  R. at 3933-59.  On August 26, 2014, Plaintiff filed exceptions to the decision with the Appeals Council (R. at 3928-32), which declined to assume jurisdiction on February 18, 2015 (R. at 3915-18).  The ALJ's decision thus became the final decision of the Commissioner after remand.  *See* 20 C.F.R. § 404.984(b)(2).

On March 12, 2015, Plaintiff filed a complaint in this Court seeking review of the Commissioner's decision.  Upon the parties' consent, this case was transferred to a United States Magistrate Judge for final disposition and entry of judgment.  The case subsequently was reassigned to the undersigned.  The parties have briefed the issues, and the matter is now fully submitted.

**II**

**<u>Summary of Evidence</u>**

**A.      State Agency Medical Consultants**

On July 19, 2011, a state agency medical consultant, Nisha Singh, M.D., assessed Plaintiff's physical residual functional capacity ("RFC").  R. at 3609-16.  Dr. Singh opined that Plaintiff could (1) lift and/or carry ten pounds occasionally and ten pounds frequently; (2) stand and/or walk for four hours in an eight-hour workday (with a medically required hand-held assistive device necessary for ambulation); (3) sit for about six hours in an eight-hour workday; and (4) perform unlimited pushing and/or pulling.  R. at 3610.  Because of Plaintiff's lower back pain, he occasionally could climb, balance, stoop, kneel, crouch, and crawl.  R. at 3611.  Plaintiff had no manipulative, visual, or communicative limitations, but he was to avoid even moderate exposure to hazards, such as machinery and heights.  R. at 3612-13.  Dr. Singh opined that "RFC for the duration of [alleged onset date of disability] through [date last insured] of 3/31/09 would be medium with [lift/carry] 50/25 and stand and or walk for 6 hrs and sit for 6 hrs due to [history of] HPN which was uncontrolled."  R. at 3616.

On July 20, 2011, another state agency consultant, Elliott Rotman, Ph.D., using the psychiatric review technique ("PRT") under 20 C.F.R. § 404.1520a, evaluated Plaintiff's mental impairments under Listings 12.04 and 12.06 relating to affective disorders and anxiety-related

disorders (R. at 3617-30).  *See* 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 12.04, 12.06.  Dr. Rotman opined that, under paragraph B of the applicable listings, Plaintiff's mental impairments caused him to experience (1) mild restriction in activities of daily living; (2) mild difficulties in maintaining social functioning; (3) mild difficulties in maintaining concentration, persistence, or pace; and (4) no repeated episodes of decompensation of extended duration.  R. at 3627.  Dr. Rotman opined that Plaintiff's "mental condition presents as non-severe currently and prior to 3/31/09."  R. at 3631.

On September 27, 2011, another state agency consultant, S. Flaherty, Ph.D., again used the PRT to evaluate Plaintiff's mental impairments under Listings 12.04 and 12.06.  R. at 3673-86.  Dr. Flaherty opined that, under paragraph B of the applicable listings, Plaintiff's mental impairments caused him to experience (1) moderate restriction in activities of daily living; (2) moderate difficulties in maintaining social functioning; (3) moderate difficulties in maintaining concentration, persistence, or pace; and (4) no repeated episodes of decompensation of extended duration.  R. at 3683.  Dr. Flaherty then assessed Plaintiff's mental RFC (R. at 3669-72) and opined that he was moderately limited in his ability to (1) understand and remember detailed instructions; (2) carry out very short and simple instructions; (3) maintain attention and concentration for extended periods; (4) perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; (5) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and to (6) accept instructions and respond appropriately to criticism from supervisors.  R. at 3669-70.  Plaintiff was markedly limited in his ability to (1) carry out detailed instructions and to (2) interact appropriately with the general public.  R. at 3669-70.  Plaintiff otherwise was not significantly

limited.  R. at 3669-70.  Dr. Flaherty opined: "[Plaintiff] attends the VA hospital outpatient clinic for mental health.  His most recent notes show an essentially intact mental status.  He has a moderate mental health impairment.  [Plaintiff], from a psych standpoint only, retains the ability to handle simple routine tasks in a low stress setting."  R. at 3671.

On October 24, 2011, another state agency consultant again assessed Plaintiff's physical RFC.  R. at 3691-98.  The consultant opined that Plaintiff could (1) lift and/or carry ten pounds occasionally and less than ten pounds frequently; (2) stand and/or walk for at least two hours in an eight-hour workday; (3) sit for about six hours in an eight-hour workday; and (4) perform unlimited pushing and/or pulling.  R. at 3692.  Plaintiff could never climb, balance, stoop, kneel, crouch, or crawl.  R. at 3693.  He could perform unlimited reaching, handling, fingering, and feeling.  R. at 3694.  Plaintiff had no visual or communicative limitations, but he was to avoid concentrated exposure to extreme cold and heat; wetness; humidity; noise; vibration; and fumes, odors, dust, gases, and poor ventilation.  R. at 3694-95.  Plaintiff was to avoid all exposure to hazards, such as machinery and heights.  R. at 3695.

## B.   Hearing Testimony

### 1.   Plaintiff's Testimony

The ALJ reviewed Plaintiff's testimony in his decision:

> In his testimony and statements prepared for the record, [Plaintiff] asserts that he was disabled and unable to return to work activity, prior to the March 31, 2009 date last insured for Title II disability benefits, as a result of his physical irregularities, mental impairment symptoms, and the resulting functional limitations. [Plaintiff] and his partner allege that these impairments severely limit [Plaintiff's] ability to lift, squat, bend, stand, reach, walk, kneel, talk, climb stairs, see, remember, complete tasks, concentrate, and use his hands [R. at 168-78, 200-18, 227-29].  He filed for unemployment and briefly received benefits in 2009; however, [Plaintiff] contends that he has not engaged in work activity since the alleged onset date of disability.  As a result of his ongoing pain, limited mobility, side effects from medication, mental impairment symptoms, and the resulting restrictions in his day to day functioning, [Plaintiff] contends that he could not

return to work activity prior to March 31, 2009, on a regular and continuing basis, at any exertional level.

[Plaintiff] described how [he] was an active duty member of the army from 1977-1983.  He was not in combat and he was never outside of the United States on active duty.  However, he was awarded a 100% disability rating from the Veteran's Administration as a result of his ongoing anxiety, back injury, and knee injury.  The back injury affected his back and neck, limiting his ability to use his upper extremities.  [Plaintiff] described how he had multiple surgical procedures during the period at issue, including his gallbladder removed and his appendix taken out.  From 2008-2009, [Plaintiff] claims that he suffered from pain that was between 7-10 on a severity scale of 1 to 10.  His knee would flare up and cause difficulty with walking.

In addition to his physical impairments, he continued to suffer from symptoms of depression and anxiety that were not fully alleviated with prescribed medications.  [Plaintiff] recounted a history of . . . panic attacks relating to sexual abuse that he suffered as a child.  The symptoms were exacerbated by a traumatic incident in 1979, where a parachute deflated during a training jump and [Plaintiff] hit the ground.  He did not suffer acute physical injury, but was no longer able to continue with his Army responsibilities.  [Plaintiff] described how he always had difficulty arriving at work, dealing with work stressors, and interacting with his co-workers.  [Plaintiff] contends that he was never on time as a result of his panic and anxiety.  He continued to suffer from panic attacks while employed, with shortness of breath, heart palpitations, and a frozen sensation that prevented him from moving.  He would take deep breaths and drink water, but he never effectively knew how to address the symptoms.  In October of 2008, he was brought to the emergency room because he was unable to breathe.  The physical and mental symptoms would exacerbate his overall functional restrictions in conjunction.  The prescribed medications caused dizziness, nausea, fatigue, dry mouth, memory irregularities, visual disturbances, and problems with focusing.  [Plaintiff] testified that he has never been diagnosed with a seizure disorder, lost a job due to alcohol or drugs, or attended detox treatment.  He was briefly incarcerated for driving under the influence when he was 19.

As a result of his impairments, [Plaintiff] contends that his functional capabilities are severely limited.  During the period at issue, [Plaintiff] alleges that he could sit for one hour before needing to stand, stand for no more than 8-15 minutes at one time, walk 15-25 feet, and carry approximately six pounds of groceries.  [Plaintiff] testified that he uses a prescribed cane and a walker to assist with ambulation approximately 98% of the time.  He began using the cane in 2008, as his knee would flare up and he would have difficulty with walking.  [Plaintiff] further described how he could use one utensil to eat, because the back injury was affecting his back and neck.  [Plaintiff] described how he completed the 11th grade of high school, but he subsequently obtained his GED and attended two years of college.  He retains the capacity to read, write, add, and subtract, but

the stroke affected his upper extremity dexterity.   [Plaintiff] contends that he worked as a paralegal on a part time basis and helped others prepare small claims cases.  He enrolled in paralegal school, but he was not able to continue as a result of his depressed state.

In the statements prepared for the record by [Plaintiff] and his partner in 2010 and 2011, they described how [Plaintiff] retains the capacity to take care of most personal needs independently, prepare small meals, wash small amounts of laundry at one time, ride in a car, drive on a limited basis with handicapped decals, shop for groceries and personal items, handle his finances, talk on the phone, and maintain regular doctor's appointments [R. at 168-78, 200-18, 220-36].  However, at the 2014 hearing, [Plaintiff] testified that he was living with another individual who provided assistance with dressing from 2008-2009.  He used a device to help put his socks on, and he required assistance with bathing and showering 75% of the time.  [Plaintiff] testified that he could cook, wash dishes, and use a dust pan with a pole on it to assist with sleeping [sic].  However, [Plaintiff] claims that he could not wash his clothes or grocery shop alone.  [Plaintiff] contends that he was limited to taking his medicine, eating, and keeping doctor's appointments.  However, he was weak most of the day and suffering from pain, dizziness, and depression [R. at 201].

R. at 3942-43; *see* R. at 3974-97, 3998-99.

## 2.     Medical Expert Testimony

ALJ Kennedy reviewed the testimony of Richard W. Cohen, M.D., a psychiatrist, in his

decision:

At the July 15, 2014, [hearing,] Dr. Richard Cohen appeared and provided testimony after reviewing the medical records from [Plaintiff].   Dr. Cohen testified that [Plaintiff's] impairments included major depressive disorder, with sleep, energy, and concentration problems.  Furthermore, [Plaintiff] suffered from PTSD with nightmares and flashbacks to two horrible events, including sexual abuse as a young boy.  [Plaintiff] continued to experience a panic disorder with agoraphobia, rapid heartbeat, shortness of breath, and avoidance behaviors.  Dr. Cohen concluded that [Plaintiff's] conditions met the requirements of 12.04(C)(2) and 12.06, with a moderate impairment in activities of daily living, moderate to marked impairment in social functioning, and moderate impairment of concentration, persistence, and pace.   There was an extended period of decompensation.  Dr. Cohen described how [Plaintiff] retains the capacity to understand, remember, and carry out short simple instructions.  However, contact with the general public for one-third of the day would be difficult with panic attacks, and he would miss three days of work per month.  Dr. Cohen concluded that the impairments were of listing level severity as of January 2011. Dr. Cohen stated that he did not have the evidence to speculate on [Plaintiff's] condition

prior to that timeframe, but opined that [Plaintiff's] B criteria restrictions would be moderate, moderate, moderate and one episode of decompensation.

R. at 3945; *see* R. at 3963-72.

### 3.   VE Testimony

The VE testified that a hypothetical individual with Plaintiff's same age, education, and work experience with the RFC outlined below in Part III could perform the unskilled, medium[2] jobs of kitchen helper, laundry worker, or sandwich maker.  R. at 4002.  According to the VE, her testimony was consistent with the *Dictionary of Occupational Titles*.[3]  R. at 4002.  On the basis of her experience, the VE testified that no jobs would be available to an individual of Plaintiff's same age, education, and work experience who would be "off task" 15% of the time or miss two days of work per month.  R. at 4004.

## III

## Summary of ALJ's Decision

On August 1, 2014, ALJ Kennedy found that, through the date last insured of March 31, 2009, Plaintiff (1) had not engaged in substantial gainful activity from the alleged onset date of disability of September 15, 2008; and (2) had an impairment or a combination of impairments considered to be "severe" on the basis of the requirements in the Code of Federal Regulations;

---

[2] "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time."  20 C.F.R. § 404.1568(a).  "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."  *Id.* § 404.1567(c).

[3] "The Social Security Administration has taken administrative notice of the *Dictionary of Occupational Titles*, which is published by the Department of Labor and gives detailed physical requirements for a variety of jobs."  *Massachi v. Astrue*, 486 F.3d 1149, 1152 n.8 (9th Cir. 2007); *see Pearson v. Colvin*, 810 F.3d 204, 205 n.1 (4th Cir. 2015); *DeLoatche v. Heckler*, 715 F.2d 148, 151 n.2 (4th Cir. 1983); 20 C.F.R. § 404.1566(d)(1).  "Information contained in the [*Dictionary of Occupational Titles*] is not conclusive evidence of the existence of jobs in the national economy; however, it can be used to establish a rebuttable presumption."  *English v. Shalala*, 10 F.3d 1080, 1085 (4th Cir. 1993).

but (3) did not have an impairment or a combination of impairments meeting or equaling one of the impairments set forth in 20 C.F.R. pt. 404, subpt. P, app. 1; and (4) was unable to perform his past relevant work; but (5) could perform other work in the national economy, such as a kitchen helper, laundry worker, or sandwich maker. R. at 3938-51. The ALJ thus found that he was not disabled from September 15, 2008, through the date last insured of March 31, 2009. R. at 3951.

In so finding, the ALJ found that, with regard to concentration, persistence, or pace,

[Plaintiff] had moderate difficulties. [Plaintiff] additionally reported limitations with memory, completing tasks, concentration, handling stress, follow [sic] instructions, understanding, and dealing with changes in routine. Nevertheless, in addition to the above stated activities, the record reflects that [Plaintiff] retained the capacity to pay bills, count change, handle a savings account, and use a checkbook/money order [R. at 204].

R. at 3941.

The ALJ then found that, through the date last insured, Plaintiff had the RFC

to perform medium work as defined in 20 CFR 404.1567(c) except [Plaintiff] was further limited to no more than 20 pounds of lifting on a frequent basis. [Plaintiff] could push or pull constantly at the medium exertional level; occasionally[] stoop, crouch, crawl, or climb ramps or stairs; and never climb ladders, ropes, or scaffolding. [Plaintiff] could never be exposed to unprotected heights, pulmonary irritants, or extremes of cold or heat. He could understand, remember, and carry out short, simple instructions, and have occasional contact with supervisors, co-workers, and the public.

R. at 3941. The ALJ also considered Plaintiff's credibility and found that his "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [his] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible, prior to March 31, 2009, for the reasons explained in this decision." R. at 3943-44.

In considering the various opinions, the ALJ found, among other things, that,

[e]ven though Dr. Cohen stated that he did not have evidence to speculate on [Plaintiff's] condition prior to January 2011, as an assessment of [Plaintiff's] "b

criteria" limitations during the period at issue, the undersigned gives this opinion partial weight, as it is consistent with the longitudinal conservative treatment history and the documented clinical/examination findings.

R. at 3945.  The ALJ gave "limited weight" to the state agency consultants' RFC assessments in September and October 2011, "as they are not consistent with the entirely conservative treatment history . . . , the limited clinical and examination evidence of acute irregularity, and [Plaintiff's] stated ongoing capabilities."  R. at 3948.

# IV

## Disability Determinations and Burden of Proof

The Social Security Act defines a disability as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.   42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905.  A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country."   42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations.  20 C.F.R. §§ 404.1520, 416.920; *see Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S. Ct. 376, 379-380 (2003).  "If at any step a finding of disability or nondisability can be made, the [Commissioner] will not review the claim further."  *Thomas*, 540 U.S. at 24, 124 S. Ct. at 379; *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  The claimant has the burden of production

and proof at steps one through four.  *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 2294 n.5 (1987); *Radford v. Colvin*, 734 F.3d 288, 291 (4th Cir. 2013).

First, the Commissioner will consider a claimant's work activity.  If the claimant is engaged in substantial gainful activity, then the claimant is not disabled.  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether the claimant has a "severe" impairment, i.e., an impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities.  *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995); *see* 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a).[4]

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment.  If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience.  20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Radford*, 734 F.3d at 293.

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4),

---

[4] The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs."  20 C.F.R. §§ 404.1521(b), 416.921(b).  These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting.  *Id.* §§ 404.1521(b)(1)-(6), 416.921(b)(1)-(6); *see Yuckert*, 482 U.S. at 141, 107 S. Ct. at 2291.

416.920(a)(4)(iv), 416.945(a)(4).   RFC is a measurement of the most a claimant can do despite his or her limitations.   *Hines v. Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006); *see* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).   The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources."   20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).   The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations.   *See id.*   If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled.   *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in step four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at step four, age, education, and work experience.   *See Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy.   *See Walls*, 296 F.3d at 290; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).   If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find that the claimant is not disabled.   If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled.   20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

If an ALJ finds that a claimant, who has medical evidence of drug addiction or alcoholism, is disabled, the ALJ must then determine whether the addiction or alcoholism is a contributing material factor to the determination of disability. *Id.* §§ 404.1535(a), 416.935(a). The key factor is whether the ALJ still would find the claimant disabled if the drug or alcohol use stopped. *Id.* §§ 404.1535(b)(1), 416.935(b)(1). To make this determination, the ALJ evaluates which of the claimant's current physical and mental limitations would remain if the claimant stopped using drugs or alcohol and then determines whether any or all of the remaining limitations would be disabling. *Id.* §§ 404.1535(b)(2), 416.935(b)(2). If the ALJ determines that the remaining limitations would not be disabling, then the ALJ will find that the drug addiction or alcoholism is a material contributing factor, and a determination of disability is prohibited. *Id.* §§ 404.1535(b)(2)(i), 416.935(b)(2)(i). The burden to prove that substance abuse is not a contributing factor material to his disability lies with the claimant. *Brown v. Apfel*, 192 F.3d 492, 498 (5th Cir. 1999).

## V

## <u>Substantial Evidence Standard</u>

The Court reviews an ALJ's decision to determine whether the ALJ applied the correct legal standards and whether the factual findings are supported by substantial evidence. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). In other words, the issue before the Court "is not whether [Plaintiff] is disabled, but whether the ALJ's finding that [Plaintiff] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." *Id.* The Court's review is deferential, as "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Under this standard, substantial evidence is less than a preponderance but is

enough that a reasonable mind would find it adequate to support the Commissioner's conclusion. *See Hancock*, 667 F.3d at 472; *see also Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).

In evaluating the evidence in an appeal of a denial of benefits, the court does "not conduct a *de novo* review of the evidence," *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986), or undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Hancock*, 667 F.3d at 472. Rather, "[t]he duty to resolve conflicts in the evidence rests with the ALJ, not with a reviewing court." *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996). When conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam).

## VI

### Discussion

Among Plaintiff's arguments are his contentions that remand is warranted for an award of benefits because of "agency mistake" (Pl.'s Am. Mot. Summ. J. 1-5, ECF No. 19) and because of the ALJ's failure to account properly for his moderate limitations in maintaining concentration, persistence, or pace in the RFC assessment (Pl.'s Mem. Supp. Am. Mot. Summ. J. 37-38, ECF No. 19-2). For the reasons discussed below, because inadequacy of the ALJ's analysis frustrates meaningful review, the Court remands this case for further proceedings.

### A.    "Agency Mistake"

Plaintiff first contends that "[a] mistake has been made" and that "[t]his matter should not be before the Court" because the Maryland Disability Determination Services ("DDS") issued a favorable decision that was later reversed by the Commissioner on unlawful grounds. Pl.'s Am.

Mot. Summ. J. 1-5, ECF No. 19; Pl.'s Mem. Supp. Am. Mot. Summ. J. 16-20, ECF No. 19-2

(citing R. at 68).    According to Plaintiff, "[i]n October 2010 [sic], Maryland Disability

Determination Services **granted** [Plaintiff's] application for [DIB], effective September 15,

2008, and his application for [SSI], effective on his filing date . . . ."  Pl.'s Am. Mot. Summ. J. 1,

ECF No. 19; Pl.'s Mem. Supp. Am. Mot. Summ. J. 16, ECF No. 19-2 (citing R. at 68).   As

Defendant points out, however, Plaintiff points to no evidence that a prior DDS determination

awarded him DIB.   Def.'s Mem. Supp. Mot. Summ. J. 13-15, ECF No. 22-1.   Plaintiff's

argument in this regard thus is unavailing.

B.    **Plaintiff's Moderate Limitations in Maintaining Concentration, Persistence, or Pace**

Social Security Ruling[5] ("SSR") 96-8p explains how adjudicators should assess RFC and

instructs that the RFC

> "assessment must first identify the individual's functional limitations or
> restrictions and assess his or her work-related abilities on a function-by-function
> basis, including the functions" listed in the regulations.   "Only after that may
> [residual functional capacity] be expressed in terms of the exertional levels of
> work, sedentary, light, medium, heavy, and very heavy."   The Ruling further
> explains that the residual functional capacity "assessment must include a narrative
> discussion describing how the evidence supports each conclusion, citing specific
> medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily
> activities, observations)."

*Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (alteration in original) (footnote omitted)

(citations omitted).   The Fourth Circuit has held, however, that a per se rule requiring remand

when the ALJ does not perform an explicit function-by-function analysis "is inappropriate given

---

[5]  Social Security Rulings are "final opinions and orders and statements of policy and
interpretations" that the Social Security Administration has adopted.   20 C.F.R. § 402.35(b)(1).
Once published, these rulings are binding on all components of the Social Security
Administration.   *Heckler v. Edwards*, 465 U.S. 870, 873 n.3, 104 S. Ct. 1532, 1534 n.3 (1984);
20 C.F.R. § 402.35(b)(1).    "While they do not have the force of law, they are entitled to
deference unless they are clearly erroneous or inconsistent with the law."  *Pass*, 65 F.3d at 1204
n.3.

that remand would prove futile in cases where the ALJ does not discuss functions that are 'irrelevant or uncontested.'" *Id.* (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) (per curiam)). Rather, remand may be appropriate "where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Id.* (quoting *Cichocki*, 729 F.3d at 177). The court in *Mascio* concluded that remand was appropriate because it was "left to guess about how the ALJ arrived at his conclusions on [the claimant's] ability to perform relevant functions" because the ALJ had "said nothing about [the claimant's] ability to perform them for a full workday," despite conflicting evidence as to the claimant's RFC that the ALJ did not address. *Id.* at 637; *see Monroe v. Colvin*, 826 F.3d 176, 187-88 (4th Cir. 2016) (remanding because ALJ erred in not determining claimant's RFC using function-by-function analysis; ALJ erroneously expressed claimant's RFC first and then concluded that limitations caused by claimant's impairments were consistent with that RFC).

Plaintiff contends that, in assessing his RFC, the ALJ failed to consider adequately his moderate difficulties in maintaining concentration, persistence, or pace, contrary to *Mascio*. Pl.'s Mem. Supp. Am. Mot. Summ. J. 37-38, ECF No. 19-2. In *Mascio*, the Fourth Circuit held that "an ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.'" *Mascio*, 780 F.3d at 638 (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011)). "[T]he ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." *Id.* The court in *Mascio* remanded the case for the ALJ to explain why the claimant's moderate limitation in concentration, persistence, or pace at step three did not translate into a

16

limitation in the claimant's RFC.  *Id.*  In other words, "[p]ursuant to *Mascio*, once an ALJ has made a step three finding that a claimant suffers from moderate difficulties in concentration, persistence, or pace, the ALJ must either include a corresponding limitation in her RFC assessment, or explain why no such limitation is necessary."  *Talmo v. Comm'r, Soc. Sec.*, Civil Case No. ELH-14-2214, 2015 WL 2395108, at *3 (D. Md. May 19, 2015), *report and recommendation adopted* (D. Md. June 5, 2015).

"The Social Security Administration has promulgated regulations containing 'listings of physical and mental impairments which, if met, are conclusive on the issue of disability.'  A claimant is entitled to a conclusive presumption that he is impaired if he can show that his condition 'meets or equals the listed impairments.'"  *Radford*, 734 F.3d at 291 (citation omitted); *see* 20 C.F.R. pt. 404, subpt. P, app. 1.  In addition to the five-step analysis discussed above in Part IV and outlined in 20 C.F.R. §§ 404.1520 and 416.920, the Commissioner has promulgated additional regulations governing evaluations of the severity of mental impairments.  20 C.F.R. §§ 404.1520a, 416.920a.  These regulations require application of a psychiatric review technique at the second and third steps of the five-step framework, *Schmidt v. Astrue*, 496 F.3d 833, 844 n.4 (7th Cir. 2007), and at each level of administrative review.  20 C.F.R. §§ 404.1520a(a), 416.920a(a).  This technique requires the reviewing authority to determine first whether the claimant has a "medically determinable mental impairment."  *Id.* §§ 404.1520a(b)(1), 416.920a(b)(1).  If the claimant is found to have such an impairment, then the reviewing authority must "rate the degree of functional limitation resulting from the impairment(s) in accordance with paragraph (c)," *id.* §§ 404.1520a(b)(2), 416.920a(b)(2), which specifies four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decomposition.  *Id.* §§ 404.1520a(c)(3),

416.920a(c)(3).  According to the regulations, if the degree of limitation in each of the first three areas is rated "mild" or better, and no episodes of decompensation are identified, then the reviewing authority generally will conclude that the claimant's mental impairment is not "severe" and will deny benefits.  *Id.* §§ 404.1520a(d)(1), 416.920a(d)(1).  If the claimant's mental impairment is severe, then the reviewing authority will first compare the relevant medical findings and the functional limitation ratings to the criteria of listed mental disorders in order to determine whether the impairment meets or is equivalent in severity to any listed mental disorder.  *Id.* §§ 404.1520a(d)(2), 416.920a(d)(2).  If so, then the claimant will be found to be disabled.  If not, the reviewing authority will then assess the claimant's RFC.  *Id.* §§ 404.1520a(d)(3), 416.920a(d)(3).

"The ALJ's decision must show the significant history and medical findings considered and must include a specific finding as to the degree of limitation in each of the four functional areas."  *Felton-Miller v. Astrue*, 459 F. App'x 226, 231 (4th Cir. 2011) (per curiam) (citing 20 C.F.R. §§ 404.1520a(e)(4), 416.920a(e)(4)).  With regard to the four functional areas, which correspond to the paragraph B criteria of the listings for mental disorders, "[a]*ctivities of daily living* include adaptive activities such as cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for [the claimant's] grooming and hygiene, using telephones and directories, and using a post office."  20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(C)(1).  "In the context of [the claimant's] overall situation, [the Commissioner assesses] the quality of these activities by their independence, appropriateness, effectiveness, and sustainability.  [The Commissioner] will determine the extent to which [the claimant is] capable of initiating and participating in activities independent of supervision or direction."  *Id.*  Moreover, "[s]*ocial functioning* refers to [the claimant's] capacity to interact

independently, appropriately, effectively, and on a sustained basis with other individuals.  Social functioning includes the ability to get along with others, such as family members, friends, neighbors, grocery clerks, landlords, or bus drivers."  *Id.* § 12.00(C)(2).   Further, "[c]*oncentration, persistence, or pace* refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings."  *Id.* § 12.00(C)(3).   "On mental status examinations, concentration is assessed by tasks such as having [the claimant] subtract serial sevens or serial threes from 100.  In psychological tests of intelligence or memory, concentration is assessed through tasks requiring short-term memory or through tasks that must be completed within established time limits."  *Id.*   Finally, "[e]*pisodes of decompensation* are exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace."  *Id.* § 12.00(C)(4).   "Episodes of decompensation may be demonstrated by an exacerbation in symptoms or signs that would ordinarily require increased treatment or a less stressful situation (or a combination of the two)."  *Id.*  Episodes of decompensation may be inferred from "medical records showing significant alteration in medication; or documentation of the need for a more structured psychological support system (e.g., hospitalizations, placement in a halfway house, or a highly structured and directing household); or other relevant information in the record about the existence, severity, and duration of the episode."  *Id.*   "The term *repeated episodes of decompensation, each of extended duration* in these listings means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks."  *Id.*

Here, the ALJ's hypothetical questions to the VE and the corresponding RFC assessment limiting Plaintiff to understanding, remembering, and carrying out short, simple instructions (R. at 3941, 4002) do not account for Plaintiff's moderate difficulties in maintaining concentration, persistence, or pace. *See Mascio*, 780 F.3d at 638. Further, the ALJ's inclusion of a limitation in the assessment of Plaintiff's RFC and in the hypothetical questions to the VE to only occasional contact with supervisors, co-workers, and the public (R. at 3941, 4002) accounts for Plaintiff's moderate difficulties in social functioning (R. at 3940) but does not account for Plaintiff's moderate difficulties in maintaining concentration, persistence, or pace (R. at 3941). *See, e.g.*, *Stewart v. Astrue*, 561 F.3d 679, 684-85 (7th Cir. 2009) (per curiam) (rejecting contention that "the ALJ accounted for [the claimant's] limitations of concentration, persistence, and pace by restricting the inquiry to simple, routine tasks that do not require constant interactions with coworkers or the general public"); *Elsey v. Comm'r, Soc. Sec. Admin.*, Civil No. SAG-14-2457, 2015 WL 2258540, at *4 (D. Md. May 12, 2015); 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(C)(2). *But see Hillard v. Colvin*, Civil Action No. ADC-15-1442, 2016 WL 3042954, at *6 (D. Md. May 26, 2016) ("The ALJ additionally accounted for Plaintiff's limitation in concentration and persistence by restricting him to work 'without frequent interaction with co-workers or the public.'"); *Linares v. Colvin*, No. 5:14-CV-00120, 2015 WL 4389533, at *4 (W.D.N.C. July 17, 2015) ("The ALJ accounted for Plaintiff's limitation in pace by restricting her to 'nonproduction pace,' and he accounted for her limitation in concentration and persistence by restricting her to a stable work environment with only occasional public contact."). "[T]he issue in this case is not whether the record contains evidence that might support the ALJ's conclusions; it is whether the ALJ explained the apparent discrepancy between [his] step three finding and [his] RFC assessment." *Talmo*, 2015 WL 2395108, at *3. Further, although

Defendant contends that any *Mascio* error by the ALJ was harmless (Def.'s Mem. Supp. Mot. Summ. J. 28-29, ECF No. 22-1), "the Fourth Circuit has declined to find harmless error where an error or omission precludes meaningful review." *Jeffries ex rel. J.J.J. v. Comm'r, Soc. Sec.*, No. JKB-15-1727, 2016 WL 3162800, at *2 (D. Md. June 7, 2016) (citing *Fox v. Colvin*, 632 F. App'x 750, 756 (4th Cir. 2015) (per curiam); *Mascio*, 780 F.3d at 636-37); *see Radford*, 734 F.3d at 296.   In short, neither the ALJ's RFC assessment nor the ALJ's hypothetical questions to the VE address Plaintiff's ability to stay on task, and the Court is left to guess how the ALJ accounted for this ability despite finding that Plaintiff had moderate difficulties in maintaining concentration, persistence, or pace.   Remand thus is appropriate. *See Harrison v. Colvin*, No. 5:15-CV-00108-MOC, 2016 WL 3679294, at *5 (W.D.N.C. July 11, 2016) (remanding because ALJ did not comply with SSR 96-8p when concluding that claimant's capability to understand, remember, and carry out simple instructions did not preclude performance of simple, routine, and repetitive tasks).   On remand, the ALJ should determine on a function-by-function basis how Plaintiff's impairments affect his ability to work for a full workday. *See Monroe*, 826 F.3d at 188.   "Only once the ALJ has conducted such an analysis will he be able to move on to steps four and five, concerning [Plaintiff's] ability to perform past work and his ability to perform other work that exists in significant numbers in the national economy." *Id.* at 188-89 (citing *Mascio*, 780 F.3d at 636).   The Court need not address Plaintiff's remaining arguments.

## VII

### Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment (ECF No. 22) is **DENIED**.   Plaintiff's Amended Motion for Summary Judgment (ECF No. 19) is **DENIED**. Plaintiff's alternative motion for remand (ECF No. 19) is **GRANTED**.   Defendant's final

decision is **REVERSED IN PART** under the fourth sentence of 42 U.S.C. § 405(g).  This matter is **REMANDED** for further proceedings consistent with this opinion.  A separate order shall issue.

Date: September 7, 2016                             _____/s/_____
                                                   Thomas M. DiGirolamo
                                                   United States Magistrate Judge